argued cases number 14 3152 Fairbanks against EPA. Mr. Kaplan. Thank you. May it please the court. Your Honor, my entry of appearance was filed, I believe, at least a week ago because Ms. Beckett left our firm, is now working for the government, and I believe a motion to substitute lead counsel either has been or is being filed. Okay, I proceed. Thank you very much. Just a minor thing. This is addressed to the government too. Why is it that the briefs aren't properly prepared with a red and gray cover? Your Honor, I have to plead ignorance not having been involved in this case before preparing for all arguments. I apologize to the court if we have failed to follow the court's rules with respect to the covers of the briefs. I think there are some facts in this case that need some elucidating before we get into a discussion of the law. The first is the agency seems to assert throughout that all employees in this case had to be furloughed as a matter of agency policy, that there was simply no getting around this preordained decision and that there was no discretion but for all of these employees to be furloughed. But by the agency's own documents, that assertion is incorrect. I would draw the court's attention to a recent document filed by the government. I think page one of its supplemental appendix it just filed with its corrected brief. I think they also number it as page 240 of the joint appendix. This is a document called Processing Guidance for Managers. In this document, this is what the agency says, that some employees will have a right to reply, a 15-day right to reply, quote, to provide a justification for being excused from the furlough. So certainly there was right within the agency's own documents an indication that there was discretion that somebody in this case would have. Secondly, in the notice… What is this document and where is it? The agency, I'm sorry, the respondent filed a corrected brief just a few days ago and has attached to it I think a supplemental joint appendix. And the very first page of that is a document called Administrative Furlough Processing Guidance for Managers. And 240? Yes, sir. Okay. And under the heading Guidance for Implementation, you see about halfway down that paragraph, the agency says this. Not all employees have the right to reply. Those who do will have 15 calendar days to provide a justification for being excluded from the furlough. So isn't your contention that the deciding officials didn't possess the authority to modify the furloughs in instances where modification was necessary? The contention here is that the individuals that were named titularly as the deciding officials possessed no discretion, no authority, for example, to exempt anyone from the furlough, which means that any reply opportunity to them is a mere formality, an empty formality. And as notions of due process and louder mail certainly indicate that the root of due process is the ability to get to the discretion of the decision maker before there is the deprivation. And that didn't happen here because the individuals named as the deciding officials in reality weren't deciding officials. And this is beyond dispute. So do you agree that if there was no discretion with respect to the furloughs that there was no error here? If there was absolutely no discretion, if the facts and the record supported that, then I think we would be on shakier ground, Judge Dyke. But there are a couple of reasons, not just the one I mentioned, but there are a couple of other reasons to show that there was discretion, if I may address those briefly. In the notice to the employees, giving them their rights to reply to the proposal, the notice says if this action is approved by the deciding official, again certainly connoting that the deciding official has some discretion here to make a decision. And even in Mr. Mather's testimony in this case, found by the arbitrator, the deciding officials named by the agency did not possess any of this discretion. Did the deciding officials have authority to modify those template letters? They had, there were I think a couple different template letters. They could modify the letter. They couldn't modify the decision. That is, there was no authority, contrary to, for example, like the Secretary of Defense gave to his subordinates in the Gattos case. There was no authority to exempt someone from the furlough, Your Honor. No authority to reduce the days. No authority to reduce the hours. And the testimony is quite clear. Mr. Mather testified, for example, that the following. I did not see my role to review any responses with an intent towards making any independent decision. Most of the responses were just boilerplate responses that didn't ask for exemption of particular employees, correct? Not exactly, Your Honor. And that's one of the other facts I wanted to address because that's what the government says in its brief, that these were all boilerplate and no employee. No, they weren't all. There were a couple of them that mentioned individual circumstances, but the vast majority of them were boilerplate, right? I believe, well, I can point to one that's right in the record that the government just said. I understand. I'm not disputing that there are a couple. I'm saying the vast majority of them were boilerplate responses that didn't ask that the individual employee be exempted. Those that I've seen at the end of the boilerplate, and most of it was boilerplate, granted, Your Honor, presented facts unique to that. No, you're not answering my question. I don't care about the ones that you've seen. That's not the relevant universe. The vast majority of the responses were boilerplate and did not ask for exemption of the individual employees. I cannot concede that because, again, those that I've seen going through the record, at the very end of it, contained circumstances. In other words, you can answer my question because you know what the facts are. Well, I do know what the facts are with respect to those that have been placed into the record and those that have been placed into the joint appendix by the parties. And those that have been placed into the joint appendix show that there were individual issues that were raised by the employees. One employee, for example, and this is at page 260 of the joint appendix, says at the end of, yes, Your Honor, what would be a boilerplate response, says the following. The boilerplate response didn't ask for an exemption, right? The boilerplate portion did not. It made arguments related to contract violations, et cetera. That would be correct, Your Honor. But those that did, and many employees did add factual circumstances related to their own situation, did ask for an exemption. And this one employee, for example, says, and this is at page 260 of the joint appendix. It's page, I think, 20 of the new- How many employees said- Your Honor, I'm sorry. I don't know that answer. The employee says- I don't think the record supports the idea that it's many. But go ahead. Well, even if it's just one, there's a violation of due process for that employee. The employee says, in the emergency response program I work in, I'm constantly receiving and responding to calls and inquiries, even when I'm not the designated responder in a certain week. These communications are urgent in nature, and the agency's mission will suffer if not attended to immediately. This is the kind of information that should be presented to somebody with discretion so that they can make the decision whether this is a valid argument, whether this employee has presented a circumstance where there will be harm to the agency's mission if he is not exempted from the furlough. The agency also indicates factually in this case that the role of the Human Resource Department and the General Counsel in providing review of the responses and the various letters, that that constituted really review of their responses. The problem with that, Your Honors, is that runs afoul of the agency's own admission. And this, I believe, is on page 31 of its brief, that the deciding officials here had no discretion. It runs afoul of the arbitrator's decision, I believe page 51 of the joint appendix, that the decision makers had no discretion. And runs afoul of Mr. Mazur's testimony and Ms. Giles' testimony admitting that this decision was made at headquarters and they had no discretion. Therefore, any role that the Human Resource Office is playing or the Office of General Counsel to put the responses together in a way that seems to comply with the law is certainly not the equivalent of action by someone who has authority and discretion to alter the decision. And, Judge Chuck, I would point out there's one other fact here that does apply to all employees, I think, with respect to the issue of discretion. And that is the extent of this furlough, the need for this furlough was constantly under review by the agency. If you recall, when the agency first announced this furlough, it was going to be 13 days. And then they change it, no, it's going to be 10 days. And then they change it, no, it's going to be 55 hours. And then they change it again, yes, it's 47 hours. Somebody in the agency had discretion. Somebody was constantly looking at this issue. No, but that's discretion as to the broad application to each employee, not discretion with respect to individual employees. I don't doubt that, Your Honor, but it still goes to the issue that we don't have here what I think the agency is trying to connote. That there was, at one point in time, like the Bing Bang Theory, a decision that all employees have to be furloughed. Well, there was a decision that all employees have to be furloughed for 47 hours eventually. Well, eventually that was the decision without taking into account anything that any individual employee said about why they should be exempted from that. And the agency has told us, as we've indicated from looking at this policy guides, the agency says that employees were supposed to be given the opportunity to explain why they should be exempted from the furlough. So this was either an indication that there should have been discretion, or it's some kind of sham document that's issued to the agency when, in fact, there was not going to be discretion. And I would like not to think that it's some subterfuge by the agency, that it was a real statement of its policy and its intent, but it never carried it through because it just did not give the decision makers the authority that they had and the authority that we've seen in other agencies. I'm going to ask the government to give me a hypothetical in which they receive a communication and say, uh-oh, this is somebody we have to not furlough because their job is so important that we have the discretion to say we're going to exempt them. I could ask you that, but you wouldn't be willing to speculate. I wouldn't, but the point is this, and I think the case law is clear, certainly the case law of the MSPB, and that is once there is a situation of a suspension or a furlough, something other than a termination, there still are due process rights. Due process rights are an opportunity, known as an opportunity to be heard. A meaningful opportunity to be heard, and it's the case law, I believe. So the question I have to the government is, if you've got one that said, hey, I'm the guy in charge of the nuclear fuel rods, they would say, uh-oh, we're not going to furlough them. Except they wouldn't say that, and the reason we know they wouldn't say that, Your Honor, is because as the arbitrator found, as the agency has admitted, and as Mr. Mather and Ms. Giles testified, they had no discretion. They believed it was... But that's sort of inconsistent. On the one hand, you're saying there was discretion to exempt people. On the other hand, you're saying there was no discretion. If there was no discretion to exempt anybody, if it was a flat rule that didn't depend on individual circumstances, there's no point to notice an opportunity to address an issue which isn't a relevant issue. What I'm saying is not inconsistent at all, Your Honor, and this is why. In this case, there was discretion. The problem was the discretion just wasn't given down to the people that were named as deciding officials. In reality, the person who had the discretion here, because of the way the agency chose to run this furlough, was the agency administrator. That's who had the discretion. Now, the agency had a couple of choices here. The agency could have done what the Secretary of Defense did, was to delegate that discretion down to lower-level officials, or what the agency chose to do here is to retain this discretion in the administrator. Now, that was its decision. It may be more onerous for the agency in terms of how it deals with it, but that was the agency's choice, Your Honor, as to how to conduct this RIF. Now, I'm not suggesting... Why shouldn't we look at this record as the agency administrator saying, I'm not going to make any exceptions? Because that runs afoul of what we've seen in the policy guidance, which indicates that's the purpose of the reply, to explain why you should be exempt. It runs afoul of the notice that was issued to the employees under 5 U.S.C. 7513 that says if the deciding official sustains the furlough, the following things will happen. Again, those are either sham documents or they are reflective of how the furlough should have been conducted. What I was going to say, Your Honor, is I'm not suggesting at all that because the administrator retained this discretion that he personally had to hear all the replies. There's no requirement under the law that he personally hear the replies. The replies... I'm sorry, my time has expired. May I finish my comment? Finish the sentence. Okay, thank you. There could be reply officials appointed who then summarize the issues in the reply, present it to the person with discretion, the administrator, who would then make the decision. Thank you. Thank you, Mr. Kaplan. Ms. Stern? Good morning, Your Honor. May it please the Court? So, Ms. Stern? I wasn't sure if you'd get a word out before that question, but of course I knew the question was coming, Your Honor. The agency decided that there would be no exemptions. That's the bottom line. That was a determination that was made at the highest levels. So the deciding official did not have that ability because there were certain policy decisions, there were certain legal decisions that basically were not going to be made by the deciding official, both in the interest of fairness and efficiency and justice. And there were no exemptions. What the deciding official did, the deciding official served as a pivotal figure. First, in terms of being the one that actually issued the decision letters and in ensuring that the proper decision letters went out to the proper employees, both in terms of the notice of any appeal rights that they may have had, but also in terms of ensuring that the decision letter an individual employee got was a letter that addressed the individual matters that they raised in their response. Because those matters were, in fact, considered by the agency. But how about this document, which unfortunately I don't have the corrected brief in front of me with the supplemental appendix, but what about this document at A240, which they suggest did say that there was discretion to exempt people. What do we make of that? Your Honor, it didn't use the word exempt. It referred to excluding, but the document goes on in the next page to specifically address what the decision letters, how that will happen. And it specifically provides, and this is at label 241 or also alternatively supplemental appendix 2, and I'm sorry for the confusion. It's in A41? Excuse me? The same document's at A41? Yes. No, I'm sorry. The same document is not in the joint appendix. It's only in the supplemental appendix. And it specifically says, with respect to decision letters, that decision letter templates will be provided by the Office of Human Resources. Employees who have replied will receive, and this is the role of the deciding official, will receive a template with a personalized section addressing the employee's reply. The essence of a constitutional due process opportunity to be heard is the opportunity to have that response considered. And in this case, that's what these employees got. Does consider imply that it's something more than an automatic response? Yes, Your Honor, and it was more than just an automatic response. However, it was arrived at by virtue of, for lack of a better word, farming out certain of the considerations. The automatic response is always no, isn't it? It's just no couched in various ways. It happened to be the case, because each time the agency looked at the legal, primarily legal challenges that were being presented, the legal experts provided responses that indicated that those legal objections were not valid. When there were objections to the basis of the furlough. So if there was a legal, if there was a factual response, I'm the person in charge of the fuel rods, and there's going to be a meltdown. That wasn't a relevant factual response, because the agency had already decided that there would be no exemptions, and in fact the agency had staggered the furlough so that the days were not in order, so that they would in fact have coverage. And that's why they were able to decide that there would be no exemptions. So relevant responses went either to legal challenges, which got due consideration by legal experts. If there had been a valid legal challenge, the legal experts would have had to respond to that. Or they perhaps responded to the financial circumstances and the financial policy decisions, and those responses also received due consideration by the experts within the agency who were responsible for looking at the financial circumstances of the sequestration, its effect on the agency, and the decision to respond by the necessity, as a matter of sound fiscal determination, to furlough some employees. So in terms of the constitutional elements of this, the constitutional right is to respond and to have that response considered meaningful, at a meaningful time and in a meaningful manner. What was the fiscal consideration? The fiscal consideration was that sequestration had caused this agency to have a budget shortfall that had to be addressed within that budget period. No, the individualized fiscal consideration. There were no individual fiscal considerations, because the agency had determined as a matter of its fiscal, of its approach to the shortfall, they would have to furlough employees. They decided the fairest way to implement those furloughs was to furlough every single employee except for the administrator and the deputy administrator. So the individualized response was the fact that you have an autistic child is simply irrelevant. Yes, Your Honor, and that's all right, because in certain cases, certain factors will be irrelevant. So, for example, in this court's recent decision in Ryan, the court said when you are removed because you lack a qualification for your job, such as a security clearance, individual mitigating factors, such as Douglas, really aren't relevant. In that case, if someone said, don't remove me because I have an autistic child, the court would say that factor is irrelevant, the deciding official shouldn't be penalized for not considering that factor. Well, not the court. I'm talking about the deciding official, and the deciding official would provide an individualized response, which would say we recognize that you have an autistic child, but it's irrelevant to our decision because we're bound. Right, and the deciding official was charged with ensuring, and it's exactly in that guidance that I just indicated, they were charged with ensuring that employees who replied received a template that addressed, had a personalized section addressing that employee's reply, but for purposes of ensuring agency-wide fairness, the agency wanted to make sure that all responses saying, I have an autistic child, would receive the same consideration. If we had regional differences in that, that would, I think, impede the fairness of the consideration, and it's all right for the agency to have an agency-wide policy that addresses that reply.  They're faced with a circumstance where they're bound by the Anti-Deficiency Act, and they're trying in some fashion to maintain the smattering of morale, which might still exist in the agency, which is why they're trying to, along with other considerations, why they're trying to do something individualized, but that individualized response as a bottom line always says no. Is that a fair summary? In this case, there was no individual employee who, and certainly petitioners have identified none, who raised a reply that didn't receive a consideration, or that raised a reply that justified or identified a legal error where the agency improperly ignored it or gave the wrong legal response. There was nothing raised that justified. Let me give you a hypothetical, because you're dealing with human beings. So did the agency, the agency gets one that says, if I'm furloughed, I'm going to kill myself. Did you refer it in some fashion to something? That is, was there a human response, other than we regret that you're going to kill yourself, but unfortunately we don't have the money. Well, again, that being a hypothetical, I would say that in that hypothetical, the agency, it's the agency's procedures that we're looking at here, and the agency's procedures required each employee to receive a decision letter that addressed their personal issues. Well, the answer would be that that's a matter for human resources, and the agency would do something about it, but this is the wrong context to take care of that problem. I think that is part of the answer, absolutely, Your Honor, but the other part of the answer is that the agency's procedures still ensured that that individual would get a personalized reply. It might not be the reply that they wanted to hear, because it would come out of human resources. But it would also, what I'm driving at is, that you're still trying to maintain that modicum of morale in some fashion, are you not? I mean, it's not just canned, or is it just canned? Well, it wasn't just canned, but the agency made the decision that furloughing every employee for the same amount of days would in fact boost morale. It was a canned response. The only response is, we can't do anything about it. I'm sorry. It is a canned response. The canned response is, we can't do anything about it. It's not a canned response except to the extent that each petitioner's response is canned. They were, in fact, canned. They were boilerplate responses on the employees, and they received... No, no, but the agency's response was, we don't care what the circumstances are. You're going to be furloughed. Everybody's going to be furloughed, right? Yes, in terms of individual circumstances, yes. That, in fact, was the agency's decision. And the agency, there's nothing wrong with that. The agency can have a policy that says, given these circumstances, the basis for the furlough, the fiscal shortcomings, the policy decisions made by the administrator, this is the policy answer is to furlough employees. That's okay. I suppose what I'm driving at is, whether you're able to say, we did the best we could, or you're not. I think the agency clearly did not only the best they could, but the procedures that they used, both in terms of the pre-implementation of the furlough, and, of course, there was a post-implementation right to appeal to an arbitrator. I'm saying that those were not only the best that they could do, but that they absolutely meet constitutional due process, because they were given notice, which is the first element, and they were given an opportunity to respond, and their responses were considered by the appropriate experts, with the appropriate expert consultations within the agency, and they were given replies that addressed any canned parts, as well as the personalized sections. Well, I don't understand. Basically, what you're saying is we didn't need to give any notice of opportunity to be heard because there wasn't any issue here to which people could address themselves, because everybody was going to be treated the same way, and that decision had already been made. I mean, if there's no relevant issue, there's no notice and opportunity to be heard. But for you to say, oh, well, we gave them due process because there was a notice and opportunity to be heard, but nobody was going to respond to any of it, so it was irrelevant. I hope that that's not what I said, because that's certainly not what I intended to say. They certainly were given notice, so that's the first aspect. They were given notice that this action was proposed and was going to take place. They were given an opportunity to raise challenges to that. They were concededly a limited number of relevant factors that they could raise in their response, but they could raise legal challenges to the sufficiency of the notice, to the timing of the notice, to the amount of notice, the information that was considered. They could even raise challenges to the policy decisions. All of those challenges they could raise, and they were considered by the agency, by the various departments that had expertise. What was not relevant for them to raise was some individual hardship circumstances, because the agency had decided that that was not going to be a source of exemption. And that's okay. That doesn't render either the notice or the opportunity to respond a sham in any way. It just says that certain factors are not relevant. That's all it says. You still have provided them with notice so that they can anticipate the furlough and make whatever plans they possibly can make, and they can also formulate their legal challenges, which they did en masse. They had paragraph after paragraph of legal challenges. If they hadn't had the notice, they wouldn't have had an opportunity to raise those legal challenges. But they did. They formulated those legal challenges. They presented them to the agency. The agency considered them, and they responded to them. That was their pre-implementation due process. They also had post-implementation due process before the arbitrator. The Supreme Court has said, of course, that what due process is required depends on the circumstances. In these circumstances, where the nature of the deprivation, and again, using the Supreme Court factors in Matthews v. Eldred, the nature of the deprivation, although admittedly difficult for individual people, was comparatively minor, compared, for example, to a permanent termination or an even longer furlough or suspension. The procedures effectively mitigated against the likelihood of any error in terms of the people who were furloughed, and the nature of the government's interest in following the procedures that they developed was extremely strong, given the sequestration, the emergency nature, the thousands of individuals who were being furloughed. In these circumstances, constitutional due process is met. Any more questions? Thank you, Sharon. Mr. Kaplan, you have your rebuttal. Thank you. Very briefly, I still don't understand the government's argument that there was no discretion here, no decision to be made in light of this language in its own policy issuance. Those who do have a right to apply have 15 calendar days to provide a justification for being excluded from the furlough. I submit that that's contrary to what the government is positing, that there was no possibility of exclusion or exemptions from the furlough. Well, what the government's saying is that you didn't make a sufficient legal argument in any one of the responses. This doesn't say anything about just being relegated to legal arguments, factual arguments. The legal argument wouldn't exclude you from the furlough. That would just mean you didn't follow procedures, go back and do the right procedures. I think a fair common sense reading of this language is a justification for being excluded from the furlough would be something personal to the employee. The MSPB in the McGiff v. Navy case has said, the agency does not afford an individual with a meaningful opportunity to respond by merely providing an empty process for presenting his defense. And that's what happened here. And just lastly, to address Matthews v. Eldridge, three-part balancing test, the 47-hour taking here, admittedly not as harsh as a termination, is still significant. It's more than a week's pay to people. Many people, it's more than a mortgage payment or more than a rent payment. With respect to the governmental interest here, this case stands in stark contrast to cases like FDIC v. Mallin and Gilbert v. Homer. The government had seven months here to meet the statutory deadline of the budget cuts. We didn't have the exigencies here, like a bank president who was lying to FDIC or a police officer who was indicted on felony drug trafficking charges. Those aren't the kinds of exigencies we had here. And lastly, with respect to the governmental or the possibility of erroneous deprivation, in Mallin and FDIC, we had indictments. We had some documents showing that there's a little likelihood that the decision would be wrong here. In this case, because the agency has said there are grounds for exception, the employees had to have that opportunity to come forward and express that. In closing, they had said, well, there is no overlap. Ms. Stern posits that the agency considered structuring the timing so that there would be overlap of employees on any particular issue. Did somebody argue that? That factually there's no overlap, nobody else overlaps? Well, I know in the one example that I was presenting before, what the employee stated was that if I'm not here to answer these calls, that there's going to be harm to the public and harm to the agency's mission. Now, I can't tell you that there are more facts in that. In that letter, he didn't say there's nobody else who can do my job. He didn't specifically, but there may be individuals who would have that information, and that's the very purpose of having a meaningful reply, so you can have that colloquy with a decision-maker so you can get to that information. You're not giving us anything in the record that shows that. No, but there's nothing in the record either to indicate that this kind of a response wouldn't be one that someone with true discretion to make a decision wouldn't consider. I see my time has expired. Okay. Thank you. Thank you, Mr. Kaplan. Ms. Stern, the case is taken under submission.